IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CYPRESS LAKE SOFTWARE, INC. | § | |
| | § | |
| *Plaintiff*, | § | Civil Case: 6:18-cv-138 |
| | § | |
| v. | § | Patents Also Asserted in Related |
| | § | Civil Case **6:17-CV-300-RWS** |
| Dell, Inc. | § | |
| | § | |
| *Defendant*. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |

## **ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Cypress Lake Software, Inc. ("Cypress") files this complaint against Dell Inc. ("Dell" or "Defendant") alleging infringement of the following validly issued United States patents (the "Patents-in-Suit"):

1.      U.S. Patent No. 8,422,858, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '858 Patent) (Exhibit 2);

2.      U.S. Patent No. 8,781,299, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '299 Patent) (Exhibit 3);

3.      U.S. Patent No. 8,787,731, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '731 Patent) (Exhibit 4);

4.      U.S. Patent No. 8,983,264, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '264 Patent) (Exhibit 5); and

5.      U.S. Patent No. 9,423,954, titled "Graphical user interface methods, systems, and computer program products" (the '954 Patent) (Exhibit 6);

1

6.    US. Patent No. 9,817,558, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '558 Patent); (Exhibit 7) and

7.    U.S. Patent No. 8,661,361, titled "Methods, systems, and computer program products for navigating between visual components" (the '361 Patent) (Exhibit 8).

8.    These seven (7) patents are attached as Exhibits 2-8 to this Complaint.

## NATURE OF THE SUIT

1.    This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.    Plaintiff Cypress Lake Software, Inc., is a Texas company with its principal place of business at 318 W. Dogwood Street, Woodville, TX 75979.  Cypress is the owner and assignee of the Patents-in-Suit.

3.    Dell, Inc. is the accused infringer.  Its principal place of business located at 1 Dell Way, Round Rock, TX 78682-7000. Dell can be served via its registered agent for service of process: Corporation Service Company; 211 E. 7th Street, Suite 620; Austin, TX 78701- 3218. Dell has employees working in its Plano Office who work with hardware and software technology involved in Chromebooks, which relate to the patents-in-suit. *See* Ex. 9 (Plano Job Postings March 2018).

## JURISDICTION AND VENUE

4.     This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*  The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

5.     The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in this District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here; and (5) Defendant has its corporate headquarters in this state.

6.     Specifically, Defendant has partnered with numerous resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas, both online and in brick and mortar stores like BestBuy; Defendant operates a website that solicits sales of infringing products by consumers in this District and Texas; Defendant offers various support services to customers in this District and Texas; Defendant offers software for download by customers in this District and Texas; Defendant leases out computer equipment to brick and mortar establishments in this District, Defendant owns property in this district where is get paid for marketing and leasing activities and Defendant has a registered agent for service in Texas (*see* above). Given these extensive contacts, the Court's exercise of jurisdiction over Defendant, who has appeared in this

District multiple times as a serial infringer, will not offend traditional notions of fair play and substantial justice.

7.      In addition to the facts above, Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant has committed acts of infringement in this District and has a regular and established place of business in this District.

8.      Venue is proper over Defendant because it has a physical place in this district that is regular and established. *See In re Cray Inc.,* No. 2017-129, 2017 WL 4201535, at *5-6 (Fed. Cir. Sept. 21, 2017).  Dell has on location in Collin County, Plano, TX 75075. In addition to the statements above, Defendant maintains property and real property interests in this District, including in Denton and Collin counties. *See* Exhibit 10. Defendant Dell leases its infringing Chromebooks, among other items, in this District.  Leasing activities of Dell alone constitutes a regular and established business in this District.

| Property ID<br>↓ Geographic ID ↓ | Owner Name |
|---|---|
| **2735198**<br>P-9000-216-5745-1 | DELL MARKETING LP |
| **2735199**<br>P-9000-216-5746-1 | DELL MARKETING LP |
| **2755210**<br>P-9000-217-0636-1 | DELL EQUIPMENT FUNDING LP |
| **2755211**<br>P-9000-217-0637-1 | DELL EQUIPMENT FUNDING LP |
| **2775671**<br>P-9000-218-4152-1 | DELL EQUIPMENT FUNDING LP |
| **2775672**<br>P-9000-218-4153-1 | DELL EQUIPMENT FUNDING LP |

(*Example of Dell's Computer Leases in Plano, Texas.  Exhibit 10.*)

9.      Venue is also appropriate because Dell receives considerable benefits from this district. Dell receives revenue from the leases and sales of its devices to businesses and consumers throughout this District. And Dell targets this district by providing customer support for the sales of its products and services.   *See* Exhibit 11 (Dell Drivers and Downloads) and Exhibit 12 (Dell U.S. Support).

10.     Defendant does business in the State of Texas, Defendant has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Cypress's claims happened in the District, and Defendant is subject to personal jurisdiction in the District.

## THE ACCUSED DEVICES

11.     Defendant designs, develops and/or manufactures "Chromebook" laptops, laptop computers that employ the Chrome operating system rather than Microsoft Windows including, but not limited to, 11 3180 83C80, 11 3180 D44PV, Chromebook 3189 Education 2-in-1, 13 3380 6TXJ4, and 3120 XDGJH - CRM3120-333BLK, and CRM112643BLK.  *See* Exhibit 1. A Chromebook is a laptop running the Linux-based Chrome OS as its operating system. The devices are primarily used to perform a variety of tasks using the Google Chrome browser, with most applications and data residing in the cloud rather than on the machine itself.

12.     Although Dell infringes the patents-in-suit and has had notice of these patents, like other serial infringers, Dell has decided to proceed willfully selling its accused products without a license.  Dell is a serial infringer.. As illustrated below, the Accused Devices infringe the Patents-in-Suit.

## PRIOR LITIGATION

13.     Cypress originally provided Dell notice of its infringement in *Cypress Lake Software, Inc. v. Dell, Inc.*, Case No. 6:16-cv-1245-RWS (E.D. Tex. Oct. 28, 2016), asserting infringement of U.S. Patent Nos. 8,781,299, 8,661,361, 8,983,264, 9,423,923, 9,423,938, and 9,423,954. (Those patents, as well as others, are also asserted in the instant case.) During that lawsuit, Cypress served infringement contentions that included some infringing accused devices that were not included in the original complaint that indicated Android as the accused functionality. Dell indicated that anything outside of Windows 10 was not properly disclosed in the original complaint as an accused product. Cypress agreed with Dell. Then, Cypress settled with Microsoft in August 2017. This

resulted in the dismissal of Dell from the original lawsuit involving Dell's accused products using Windows 10 in its accused products. Cypress filed this lawsuit to continue, without interruption, litigation of its other counts of infringement to accommodate Dell's request that Android products not listed in the original complaint should be included in a separate lawsuit. *See Apple, Inc. v. Rensselaer Polytechnic Institute, et al.*, IPR2014-00319, Paper 12 at 6-7 (PTAB Jun. 12, 2014); *eBay, Inc. v. Advanced Auctions LLC*, IPR2014-00806, Paper 14 at 3, 7 (PTAB Sep. 25, 2014).

**COUNT 1:**
**INFRINGEMENT OF U.S. PATENT NO. 8,422,858**

14.     Cypress incorporates by reference the allegations in the paragraphs above.

15.     The '858 Patent is valid, enforceable, and was duly and legally issued on April 16, 2013.

16.     Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '858 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

17.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '858 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '858 Patent.  Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale, lease, and sell the Accused Devices in the United States, in numerous stores and websites; and Defendant generates revenue from sales of the Accused Devices to U.S. customers.

18.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 14 of the '858 Patent which teaches

> A non-transitory computer readable medium embodying a computer program, executable by a machine, for coordinating playing of media streams, the computer program comprising executable instructions for:
>
> detecting a first media player access to a first presentation device to play a first media stream;
>
> accessing first presentation focus information for determining whether the first media player has first presentation focus for playing the first media stream;
>
> determining based on the first presentation focus information that the first media player does not have first presentation focus;
>
> in response to determining the first media player does not have first presentation focus, indicating that the first media player is not allowed to play the first media stream;
>
> detecting a change in the first presentation focus information;
>
> determining, based on the detected change, that the first media player has first presentation focus; and
>
> indicating, in response to determining the first media player has first presentation focus, that the first media player is allowed to play the first media stream via the first presentation device.

19.    The Accused Devices employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium").  An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("detecting a first media player access to a first presentation device to play a first media stream … accessing first presentation focus information for determining whether the first media player has first presentation focus for playing the

first media stream"). The operating system can tell whether a media player has priority to cast (it contains code for "determining based on the first presentation focus information that the first media player does not have first presentation focus").

20.    Additionally, if a media player (e.g., YouTube) does not have presentation focus, the device indicates which media player has presentation focus (e.g., Google Play Video, etc.) (it contains code for "in response to determining the first media player does not have first presentation focus, indicating that the first media player is not allowed to play the first media stream;"). An Accused Device can also tell the user whether the video can be played on the television or other display (it contains code for "detecting a change in the first presentation focus information"), and can tell the user whether the video can be played on the device itself (it contains code for "determining, based on the detected change, that the first media player has first presentation focus").

21.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

22.    In the specification of the '858 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained. This difference is not "well known" or "conventional."

23.    A human cannot perform these tasks.

24.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '858 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling,

without license or authority, products for use in systems that fall within the scope of one or more claims of the '858 Patent. Such products include, without limitation, one or more of the Accused Devices. Such products have no substantial non-infringing uses and are for use in systems that infringe the '858 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '858 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Devices. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '858 Patent at least as early as the service of the original complaint, the prior complaint in Case 6:16-cv-1249, Defendant's due diligence in connection with related litigation between the parties (*see* ¶ 14), and Defendant's routine freedom to operate analysis. Defendant induces its end users to infringe at the very least through advertising and/or user manuals. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."). Thus, Defendant is liable for infringement of one or more claims of the '858 Patent by actively inducing infringement and/or is liable as contributory infringer[1] of one or more claims of the '858 Patent under 35 U.S.C. § 271.

---

[1] In a claim for contributory infringement, focus is directed to the infringing *feature or component* incorporated into Defendant's Accused Products. *See* H.R.Rep. No. 82-1923 at 9 (stating contributory infringement "applies not only to the bare sale of an infringing

25.    Defendant's acts of infringement of the '858 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '858 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

26.    On information and belief, Defendant's infringement of the '858 Patent has been and continues to be willful. Defendant has had knowledge of the '858 Patent, including but not limited to at least one or more of the following:

    a.    The original complaint filed in this case (Dkt. 1) on or about March 20, 2018.

    b.    Defendant's acts are willful as it knew about this patent as it relates to other patents asserted by Cypress against Dell in a prior 2016 lawsuit.  But Defendant did not stop its infringing activity, including importing, offering for sale and selling the accused products.

    c.    Due Diligence conducted in conjunction with a prior suit between the parties.

---

component, but also to the sale of that component as part of a product or device"); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, 545 U.S. 913, 32 (2007); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 20, 21 (Fed. Cir. 2009) (finding that while specific instructions as to how to use an infringing feature indicates contributory infringement, it is also implied where a product's feature or component does not have substantial non-infringing uses); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 27 (Fed. Cir. 2008) ("We are unable to read Sony or Grokster as requiring the court to ignore the sale of a separable, distinct and infringing component because it is bundled together with a noninfringing component before being distributed."). The Defendant's accused products not only include features or components that infringe on Cypress' Patents-in-Suit, but the Defendant makes instructions available through descriptions of these infringing features or components and/or instruction manuals.

d.   Routine freedom to operate analyses.

e.   Discussions with Google, Inc.

f.   The filing of lawsuits against Samsung and HP for their infringing Chromebooks.

*See Bush Seismic Techs. LLC v. Am. Gem Socy.,* 2:14-CV-1809-JRG, 2016 WL 9115381, at *2 (E.D. Tex. Apr. 13, 2016) ("Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants.") (internal marks omitted). On information and belief, Defendant has had at least had constructive notice of the '858 Patent by operation of law.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT NO. 8,781,299

27.    Cypress incorporates by reference the allegations in the paragraphs above.

28.    The '299 Patent is valid, enforceable, and was duly and legally issued on July 15, 2014.

29.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '299 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

30.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '299 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '299 Patent.  Specifically, Defendant imports the Accused Devices into the United States; has

partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites and generates revenue from sales of the Accused Devices to U.S. customers via those outlets. Defendant also tests its products before sale and upon return.

31.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 1 of the '299 Patent which teaches

> A computer program product embodied on a non-transitory computer readable medium, comprising:
>
> code for working in association with a first presentation device having a touchscreen that is capable of providing access to a plurality of applications including a first media player and a second media player in an execution environment, the first presentation device capable of communication with a second presentation device including a display via a wireless local area network on which the first presentation device resides, where execution environment presentation focus information is accessible for identifying whether at least one of the first presentation device or the second presentation device is to be utilized for presentation in connection with the applications;
>
> code for detecting access to the first media player to play a first media stream that includes video;
>
> code for indicating, if the first presentation device is to be utilized for presentation based on the execution environment presentation focus information, that the first media player is allowed to play the first media stream via the first presentation device;
>
> code for indicating, if the second presentation device is to be utilized for presentation based on the execution environment presentation focus information, that the first media player is allowed to play the first media stream via the second presentation device;
>
> code for indicating, if both the first presentation device and the second presentation device are to be utilized for presentation based on the execution environment presentation focus information, that the first

media player is allowed to play the first media stream via both the first presentation device and the second presentation device;

wherein the computer program product is operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player second presentation focus, a change in input focus, a change in an attribute of a user interface element, a count of media streams being played, a ranking of media streams being played, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device.

32.     The Accused Devices employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium"). Using various technologies, an Accused Device can play or "cast" its audio and video media, or the contents of its screen, or other application(s), to other enabled devices such as stereos, televisions, projectors, and computers. An Accused Device therefore contains software that cooperates with it ("code for working in association with a first presentation device having a touchscreen") to provide a user access to multiple applications ("capable of providing access to a plurality of applications"), including at least two media players— e.g., two media playback programs such as Google Home app, Google Play Video, Chrome browser, a combination of a media play program with Chrome OS, etc.— ("including a first media player and a second media player in an execution environment"), and communicate with a television or other display ("the first presentation device capable of communication with a second presentation device including a display") over its wireless network ("via a wireless local area network on which the first presentation device resides").

14

33.     An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("code for detecting access to the first media player to play a first media stream that includes video") and whether the video can be played on the device itself (it contains "code for indicating … that the first media player is allowed to play the first media stream via the first presentation"), if so desired ("if the first presentation device is to be utilized for presentation device based on the execution environment presentation focus information").

34.     An Accused Device can tell the user whether the video can be played on the television or other display (it contains "code for indicating … that the first media player is allowed to play the first media stream via the second presentation device"), if so desired ("if the second presentation device is to be utilized for presentation based on the execution environment presentation focus information").  An Accused Device can also tell the user whether the video can be played on both the device and the television ("code for indicating … that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device"), if so desired ("if both the first presentation device and the second presentation device are to be utilized for presentation based on the execution environment presentation focus information").

35.     An Accused Device's operating system can also switch where a particular video is being displayed, and which video that is ("wherein the computer program product is operable such that a change in presentation focus is"), based on a number of inputs ("capable of being based on at least one of"), including, for example, choosing "Cast" ("detected user input indication for giving the second media player second presentation focus"), selecting "Cast" from the actual Chrome Operating System ("another user

interface element sharing a region of a display of the first presentation device"), or perhaps having a higher-priority video or advertisement pop up ("ranking of media streams being played").

36.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

37.    In the specification of the '299 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional."

38.    A human cannot perform these tasks.

39.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '299 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '299 Patent. Such products include, without limitation, one or more of the Accused Devices. Such products have no substantial non-infringing uses and are for use in systems that infringe the '299 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '299 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Devices. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.,* 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had

knowledge of the '299 Patent at least as early as the service of the original complaint, the prior complaint in Case 6:16-cv-1249, Defendant's due diligence in connection with related litigation between the parties (see ¶ 14), and Defendant's routine freedom to operate analysis. Defendant induces its end users to infringe at the very least through advertising and/or user manuals. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."). Thus, Defendant is liable for infringement of one or more claims of the '299 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '299 Patent under 35 U.S.C. § 271.

40.    On information and belief, Defendant's infringement of the '299 Patent has been and continues to be willful. Defendant has had knowledge of the '299 Patent, including but not limited to at least one or more of the following:

   a.   The original complaint filed in this case (Dkt. 1) on or about March 20, 2018.

   b.   Defendant's acts are willful as it knew about this patent since 2016 based on a prior lawsuit with Cypress.  But Defendant did not stop its infringing activity, including importing, offering for sale and selling the accused products.

   c.   Due Diligence conducted in conjunction with a prior suit between the parties.

    d.   Routine freedom to operate analyses.

    e.   Discussions with Google, Inc.

    f.   The filing of lawsuits against Samsung and HP for their infringing Chromebooks.

*See Bush Seismic Techs. LLC v. Am. Gem Socy.,* 2:14-CV-1809-JRG, 2016 WL 9115381, at \*2 (E.D. Tex. Apr. 13, 2016) ("Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants.") (internal marks omitted). On information and belief, Defendant has had at least had constructive notice of the '299 Patent by operation of law.

41.    Defendant's acts of infringement of the '299 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '299 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**COUNT 3:**
**INFRINGEMENT OF U.S. PATENT NO. 8,787,731**

42.    Cypress incorporates by reference the allegations in the paragraphs above.

43.    The '731 Patent is valid, enforceable, and was duly and legally issued on July 22, 2014.

44.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '731 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

45.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '731 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '731 Patent.  Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites and generates revenue from sales of the Accused Devices to U.S. customers via those outlets. Defendant also tests its products before sale and upon return.

46.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 1 of the '731 Patent which teaches

> A computer program product embodied on a non-transitory computer readable medium, comprising:
>
> code for detecting a first media player access to a first presentation device to play a first media stream, where presentation focus information is accessible for identifying whether the first media player has first presentation focus for playing the first media stream;
>
> code for indicating, if the first media player has first presentation focus, that the first media player is allowed to play the first media stream via the first presentation device;
>
> code for detecting a second media player access to play a second media stream while the second media player does not have second presentation focus, where the second media stream is not played via the first presentation device while the second media player does not have second presentation focus; and
>
> code for indicating, if there is a change in the presentation focus information and the second media player has second presentation focus,

that the second media player is allowed to play the second media stream via the first presentation device;

wherein the computer program product is operable such that the change in the presentation focus information is based on at least one of a releasing of the first presentation focus in connection with the first media player, a detected user input indication for giving the second media player second presentation focus, a change in input focus, a change in an attribute of a user interface element, a count of media streams being played, a ranking of media streams being played, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device.

47.     The Accused Devices employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium").   An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("code for detecting a first media player access to a first presentation device to play a first media stream") and whether the video can be played on the device itself (it contains "code for indicating … that the first media player is allowed to play the first media stream via the first presentation device"), if so desired ("if the first media player has first presentation focus").

48.     An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("code for detecting a second media player access to play a second media stream"). Additionally, an Accused Device's operating system allows for a first media player (e.g. one of Home, Google Play Movies, YouTube, etc.) to stream a media stream while a second media player (e.g. a second one of Home, Google Play Movies, YouTube, etc.) may be used play a media stream on the Accused Device. An Accused Device can also tell the user whether the video can be played on the television or other display (it contains "code for indicating … that the second media

player is allowed to play the second media stream via the first presentation device"), if so desired ("if there is a change in the presentation focus information and the second media player has second presentation focus").

49.    An Accused Device's operating system can also switch where a particular video is being displayed, and which video that is ("the computer program product is operable such that the change in the presentation focus information is based on") based on a number of inputs, including, for example, choosing "Cast" ("detected user input indication for giving the second media player second presentation focus"), selecting "Cast" from the actual Chrome OS ("another user interface element sharing a region of a display of the first presentation device"), or perhaps having a higher-priority video or advertisement pop up ("a ranking of media streams being played").

50.     These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

51.    In the specification of the '731 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional."

52.    A human cannot perform these tasks.

53.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '731 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one

or more claims of the '731 Patent. Such products include, without limitation, one or more of the Accused Devices. Such products have no substantial non-infringing uses and are for use in systems that infringe the '731 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '731 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Devices. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '731 Patent at least as early as the service of the prior complaint in Case 6:16-cv-1249, Defendant's due diligence in connection with related litigation between the parties (see ¶ 14), and Defendant's routine freedom to operate analysis. Defendant induces its end users to infringe at the very least through advertising and/or user manuals. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."). Thus, Defendant is liable for infringement of one or more claims of the '731 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '731 Patent under 35 U.S.C. § 271.

54.    On information and belief, Defendant's infringement of the '731 Patent has been and continues to be willful. Defendant has had knowledge of the '731 Patent, including but not limited to at least one or more of the following:

a.  The original complaint filed in this case (Dkt. 1) on or about March 20, 2018.

b.  Defendant's acts are willful as it knew about this patent since 2016 based on a prior lawsuit with Cypress.  But Defendant did not stop its infringing activity, including importing, offering for sale and selling the accused products.

c.  Due Diligence conducted in conjunction with a prior suit between the parties.

d.  Routine freedom to operate analyses.

e.  Discussions with Google, Inc.

f.  The filing of lawsuits against Samsung and HP for their infringing Chromebooks.

*See Bush Seismic Techs. LLC v. Am. Gem Socy.,* 2:14-CV-1809-JRG, 2016 WL 9115381, at *2 (E.D. Tex. Apr. 13, 2016) ("Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants.") (internal marks omitted). On information and belief, Defendant has had at least had constructive notice of the '731 Patent by operation of law.

55.    Defendant's acts of infringement of the '731 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '731

Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

## COUNT 4:
## INFRINGEMENT OF U.S. PATENT NO. 8,983,264

56.    Cypress incorporates by reference the allegations in the paragraphs above.

57.    The '264 Patent is valid, enforceable, and was duly and legally issued on March 17, 2015.

58.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '264 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

59.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '264 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '264 Patent.  Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites and generates revenue from sales of the Accused Devices to U.S. customers via those outlets. Defendant also tests its products before sale and upon return.

60.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 61 of the '264 Patent which teaches

A computer program product embodied on a non-transitory computer readable medium, comprising:

code for working in association with a first presentation device having a touchscreen that is capable of providing access to a first media player and a second media player in an execution environment, the first presentation device capable of communication with a second presentation device including a display via a wireless local area network on which the first presentation device resides, where presentation focus information is accessible for identifying whether at least one of the first presentation device or the second presentation device is to be utilized for presentation;

code for detecting access to the first media player to play a first media stream that includes video;

code for indicating, if the first presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the first presentation device; and

code for indicating, if the second presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the second presentation device;

wherein the computer program product is operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player a second presentation focus, a change in input focus, a change in an attribute of a user interface element, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device.

61.     The Accused Devices employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium").   Using various technologies, an Accused Device can play or "cast" its audio and video media, or the contents of its screen, or other application(s), to other enabled devices such as stereos, televisions, projectors, and computers. An Accused Device therefore contains software

that cooperates with it ("code for working in association with a first presentation device having a touchscreen") to provide a user access to multiple applications ("capable of providing access to a plurality of applications"), including at least two media players— e.g., two media playback programs such as Google Home app, Google Play Video, a combination of a media play program with Android OS, etc.—("including a first media player and a second media player in an execution environment"), and communicate with a television or other display ("the first presentation device capable of communication with a second presentation device including a display") over its wireless network ("via a wireless local area network on which the first presentation device resides").

62.    An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("code for detecting access to the first media player to play a first media stream that includes video") and whether the video can be played on the device itself (it contains "code for indicating … that the first media player is allowed to play the first media stream via the first presentation device"), if so desired ("if the first presentation device is to be utilized for presentation based on the presentation focus information").

63.    An Accused Device can also tell the user whether the video can be played on the television or other display (it contains "code for indicating … that the first media player is allowed to play the first media stream via the second presentation device"), if so desired ("if the second presentation device is to be utilized for presentation based on the presentation focus information").

64.    An Accused Device's operating system can also switch where a particular video is being displayed, and which video that is ("the computer program product is operable such

that a change in presentation focus is capable") based on a number of inputs, including, for example, choosing "Cast" ("detected user input indication for giving the second media player second presentation focus"), selecting "Cast" from the actual Chrome Operating System ("another user interface element sharing a region of a display of the first presentation device"), or perhaps having a higher-priority video or advertisement pop up ("ranking of media streams being played").

65.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

66.    In the specification of the '264 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional."

67.    A human cannot perform these tasks.

68.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '264 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '264 Patent. Such products include, without limitation, one or more of the Accused Devices. Such products have no substantial non-infringing uses and are for use in systems that infringe the '264 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '264 Patent under 35 U.S.C. § 271. Those whom

Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Devices. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '264 Patent at least as early as the service of the original complaint, the prior complaint in Case 6:16-cv-1249, Defendant's due diligence in connection with related litigation between the parties, and Defendant's routine freedom to operate analysis. Defendant induces its end users to infringe at the very least through advertising and/or user manuals. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."). Thus, Defendant is liable for infringement of one or more claims of the '264 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '264 Patent under 35 U.S.C. § 271.

69.     On information and belief, Defendant's infringement of the '264 Patent has been and continues to be willful. Defendant has had knowledge of the '264 Patent, including but not limited to at least one or more of the following:

      a.   The original complaint filed in this case (Dkt. 1) on or about March 20, 2018.

      b.   Defendant's acts are willful as it knew about this patent since 2016 based on a prior lawsuit with Cypress.  But Defendant did not stop its infringing

            activity, including importing, offering for sale and selling the accused products.

    c.    Due Diligence conducted in conjunction with a prior suit between the parties.

    d.    Routine freedom to operate analyses.

    e.    Discussions with Google, Inc.

    f.    The filing of lawsuits against Samsung and HP for their infringing Chromebooks.

*See Bush Seismic Techs. LLC v. Am. Gem Socy.,* 2:14-CV-1809-JRG, 2016 WL 9115381, at *2 (E.D. Tex. Apr. 13, 2016) ("Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants.") (internal marks omitted). On information and belief, Defendant has had at least had constructive notice of the '264 Patent by operation of law.

70.    Defendant's acts of infringement of the '264 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '264 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**COUNT 5:**
**INFRINGEMENT OF U.S. PATENT NO. 9,423,954**

71.    Cypress incorporates by reference the allegations in the paragraphs above.

72.     The '954 Patent is valid, enforceable, and was duly and legally issued on August 23, 2016.

73.     Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '954 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

74.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '954 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '954 Patent.  Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites and generates revenue from sales of the Accused Devices to U.S. customers via those outlets. Defendant also tests its products before sale and upon return.

75.     Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 14 of the '954 Patent which teaches

> An apparatus, comprising:
>
> at least one processor configured for coupling with memory and a touchscreen, and further configured for:
>
> storage of a plurality of applications including a first application, a second application, and a third application, utilizing the memory, the applications including a first program component and a second program component;
>
> detection of a first user input;

in response to the first user input, presentation of, utilizing the touchscreen, a first window associated with the first program component including at least one user interface element;

detection of a second user input in connection with the at least one user interface element of the first window;

in response to the second user input in connection with the at least one user interface element of the first window, creation of a second window associated with the second program component and presentation thereof, utilizing the touchscreen, adjacent to and not overlapping with respect to the first window, for presenting, in the second window, data associated with the at least one user interface element of the first window;

detection of a third user input; and

in response to the third user input, change, utilizing the touchscreen, the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed, and the second window remains adjacent to and not overlapping with respect to the first window.

76.    Each of the Accused Devices running the Chrome Operating System is an apparatus comprised of at least one processor (e.g., Intel Core i5) configured to connect to a display (e.g., 14" LCD) and memory (RAM and hard drive), memory (RAM and hard drive), and at least one input device (mouse, keyboard, touchpad and/or touchscreen).

77.    An Accused Device running Chrome OS can store three (or more) applications in its memory ("storage of a first application, a second application, and a third application, utilizing the memory"), the applications including at least two instances running ("the applications including a first program component and a second program component") in separate tabs.  An Accused Device can detect a user input via the touchscreen ("detection of a first user input") to move and re-size an application window to either side of the screen. This is accomplished by of using the Alt "]" command to move the application

window to the right half of the screen. The Accused Device will display the first instance of the Chrome application ("present[], utilizing the touchscreen, a first window associated with the first program component"), for instance, and its graphical user interface "tab" ("including at least one user interface element").

78.    The user may then (the Accused Device "detect[s] a second user input") select and "pull" the second tab out of the first window ("in connection with the at least one user interface element of the first window") and the Device will display it in a window ("creat[e] a second window associated with the second program component and presentation thereof, utilizing the touchscreen [and] present[], in the second window, data associated with the at least one user interface element of the first window") in the other half of the screen ("adjacent to and not overlapping with respect to the first window").

79.    The user may then select the vertical border between the two windows and drag it left or right to re-size the second window relative to the first (the Accused Device "detect[s] a third user input") and the Accused Device will then re-size the windows on the screen accordingly ("in response to the third user input, change, utilizing the touchscreen, the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed, and the second window remains adjacent to and not overlapping with respect to the first window").

80.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

81.    In the specification of the '954 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional."

82.    A human cannot perform these tasks.

83.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '954 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '954 Patent. Such products include, without limitation, one or more of the Accused Devices. Such products have no substantial non-infringing uses and are for use in systems that infringe the '954 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '954 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Devices. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '954 Patent at least as early as the service of the original complaint, the prior complaint in Case 6:16-cv-1249, Defendant's due diligence in connection with related litigation between the parties (see ¶ 14), and Defendant's routine freedom to operate analysis. Defendant induces its end users to infringe at the very least through advertising and/or user manuals. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial

evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."). Thus, Defendant is liable for infringement of one or more claims of the '954 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '954 Patent under 35 U.S.C. § 271.

84.    On information and belief, Defendant's infringement of the '954 Patent has been and continues to be willful. Defendant has had knowledge of the '954 Patent, including but not limited to at least one or more of the following:

    a.  The original complaint filed in this case (Dkt. 1) on or about March 20, 2018.

    b.  Defendant's acts are willful as it knew about this patent since 2016 based on a prior lawsuit with Cypress.  But Defendant did not stop its infringing activity, including importing, offering for sale and selling the accused products.

    c.  Due Diligence conducted in conjunction with a prior suit between the parties.

    d.  Routine freedom to operate analyses.

    e.  Discussions with Google, Inc.

    f.  The filing of lawsuits against Samsung and HP for their infringing Chromebooks.

*See Bush Seismic Techs. LLC v. Am. Gem Socy.,* 2:14-CV-1809-JRG, 2016 WL 9115381, at *2 (E.D. Tex. Apr. 13, 2016) ("Actual knowledge of infringement or the infringement

risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants.") (internal marks omitted). On information and belief, Defendant has had at least had constructive notice of the '954 Patent by operation of law.

85.    Defendant's acts of infringement of the '954 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '954 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

### COUNT 6:
### INFRINGEMENT OF U.S. PATENT NO. 9,817,558

86.    Cypress incorporates by reference the allegations in the paragraphs above.

87.    The '558 Patent is valid, enforceable, and was duly and legally issued on November 14, 2017.

88.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '558 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

89.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '558 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '558 Patent.  Specifically, Defendant imports the Accused Devices into the United States; has

partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; and Defendant generates revenue from sales of the Accused Devices to U.S. customers via those outlets. Defendant also tests its products before sale and upon return.

90.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 24 of the '558 Patent which teaches

> A first presentation device, comprising: a non-transitory memory storing instructions; a touchscreen; and one or more processors in communication with the non-transitory memory and the touchscreen,

> wherein the one or more processors execute the instructions to: provide access to a first media player and a second media player, where the first media player is presented with at least one first input control and the second media player is presented with at least one second input control, the at least one first input control and the at least one second input control each including at least one of a play input control or a pause input control, the first presentation device configured to communicate with a second presentation device including a display via a wireless network to which the first presentation device is capable of connecting;

> detect a selection of the at least one first input control presented with the first media player to play a first media stream that includes video;

> in response to the detection of the selection of the at least one first input control presented with the first media player and if the first presentation device is to be utilized for presentation, allow the first media stream to be presented via the first presentation device;

> in response to the detection of the selection of the at least one first input control presented with the first media player and if the second presentation device is to be utilized for presentation, allow the first media stream to be presented via the second presentation device; and

> permit a change to a presentation focus of at least one of the first media player or the second media player, in connection with at least one of the first presentation device or the second presentation device;

wherein the first presentation device is configured such that the change in presentation focus is capable of being caused by at least one of: a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player a second presentation focus, a change in input focus, a change in an attribute of a user interface element, a count of media streams being played, a ranking of media streams being played, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device.

91.    The Accused Devices employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium").  Using various technologies, an Accused Device can play or "cast" its audio and video media, or the contents of its screen, or other application(s), to other enabled devices such as stereos, televisions, projectors, and computers. An Accused Device therefore contains software that cooperates with it ("[a] first presentation device, comprising: a non-transitory memory storing instructions; a touchscreen; and one or more processors in communication with the non-transitory memory and the touchscreen") to provide a user access to multiple media players ("provide access to a first media player and a second media player"), including at least two media players—e.g., two media playback programs such as Google Home app, Google Play Video, Chrome browser, a combination of a media play program with Chrome OS, etc.—, and communicate with a television or other display ("the first presentation device configured to communicate with a second presentation device including a display") over its wireless network ("via a wireless network to which the first presentation device is capable of connecting").

92.    An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("detect a selection of the at least one first input

control presented with the first media player to play a first media stream that includes video ") and whether the video can be played on the device itself ("allow the first media stream to be presented via the first presentation device"""), if so desired ("if the first presentation device is to be utilized for presentation").

93.    An Accused Device can tell the user whether the video can be played on the television or other display ("allow the first media stream to be presented via the second presentation device"), if so desired ("if the second presentation device is to be utilized for presentation").

94.    An Accused Device's operating system can also switch where a particular video is being displayed, and which video that is ("permit a change to a presentation focus of at least one of the first media player or the second media player, in connection with at least one of the first presentation device or the second presentation device"), based on a number of inputs ("wherein the first presentation device is configured such that the change in presentation focus is capable of being caused by at least one of"), including, for example, choosing "Cast" ("a detected user input indication for giving the second media player a second presentation focus"), selecting "Cast" from the actual Chrome Operating System ("another user interface element sharing a region of a display of the first presentation device"), or perhaps having a higher-priority video or advertisement pop up ("ranking of media streams being played").

95.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

96.     In the specification of the '558 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional."

97.     A human cannot perform these tasks.

98.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '558 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '558 Patent. Such products include, without limitation, one or more of the Accused Devices. Such products have no substantial non-infringing uses and are for use in systems that infringe the '558 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '558 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Devices. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '558 Patent pursuant to Defendant's due diligence in connection with related litigation between the parties (see ¶ 14) and Defendant's routine freedom to operate analysis. Defendant induces its end users to infringe at the very least through advertising and/or user manuals. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct

infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."). Thus, Defendant is liable for infringement of one or more claims of the '558 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '558 Patent under 35 U.S.C. § 271.

99.     On information and belief, Defendant's infringement of the '558 Patent has been and continues to be willful. Defendant has had knowledge of the '558 Patent, including but not limited to at least one or more of the following:

   a.   The original complaint filed in this case (Dkt. 1) on or about March 20, 2018.

   b.   Defendant's acts are willful as it knew about patents related to this patent since 2016 based on a prior lawsuit with Cypress.  But Defendant did not stop its infringing activity, including importing, offering for sale and selling the accused products.

   c.   Due Diligence conducted in conjunction with a prior suit between the parties.

   d.   Routine freedom to operate analyses.

   e.   Discussions with Google, Inc.

   f.   The filing of lawsuits against Samsung and HP for their infringing Chromebooks.

*See Bush Seismic Techs. LLC v. Am. Gem Socy.,* 2:14-CV-1809-JRG, 2016 WL 9115381, at *2 (E.D. Tex. Apr. 13, 2016) ("Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must

adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants.") (internal marks omitted). On information and belief, Defendant has had at least had constructive notice of the '558 Patent by operation of law.

100.    Defendant's acts of infringement of the '558 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '558 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

### COUNT 7:
### INFRINGEMENT OF U.S. PATENT NO. 8,661,361

101.    Cypress incorporates by reference the allegations in the paragraphs above.

102.    The '361 Patent is valid, enforceable, and was duly and legally issued on February 25, 2014.

103.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '361 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

104.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '361 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '361 Patent.  Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the

United States, in numerous stores and websites and Defendant generates revenue from sales of the Accused Devices to U.S. customers via those outlets. Defendant also tests its products before sale and upon return.

105.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 68 of the '361 Patent which teaches

> A computer program product embodied on a non-transitory computer-readable medium comprising:
>
> code for presenting, in a first application region of a presentation space of a display device, a first visual component of a first network application in a plurality of network applications;
>
> code for presenting a first navigation control utilizing a hypertext markup language (HTML), in a first navigation region determined based on the first application region, for navigating to a second visual component, of a second network application in the plurality, in a second application region in the presentation space, wherein the first navigation region is determined based on a location of at least one of the first visual component, a parent visual component of the first visual component, and a child visual component of the first visual component;
>
> code for detecting a user input corresponding to the first navigation control; and
>
> code for sending, in response to detecting the user input, navigation information to navigate to the second visual component.

106.    Accused Devices are shipped with www.google.com as the default search engine that, when accessed, cause: receipt, storage, and use of code for providing "Apps Grid" functionality. To this end, include a *computer program product embodied on a non-*

*transitory computer-readable medium.* The Accused Devices therefore infringe these elements literally or, in the alternative, under the doctrine of equivalents.

107.    Accused Devices with "Apps Grid" use *code for presenting, in a first application region* (e.g. Google Search interface region, etc.) *of a presentation space of a display device, a first visual component* (e.g.  Google Search header including the "Apps Grid" control, etc.) *of a first network application* (e.g. Google Search, etc.) *in a plurality of network applications* (e.g. Google Drive, Play, Gmail, Maps, YouTube, Search, etc.).  The Accused Devices therefore infringe these elements literally or, in the alternative, under the doctrine of equivalents.

108.    Accused Devices with "Apps Grid" use *code for presenting a first navigation control* (e.g. one or more application tiles, etc.) *utilizing a hypertext markup language (HTML), in a first navigation region* (e.g. drop-down navigation panel, etc.) *determined based on the first application region* (e.g. Google Search interface region, etc.)*, for navigating to a second visual component* (e.g. any component associated with second network application, etc.)*, of a second network application* (e.g. one of Google Drive, Play, Gmail, Maps, YouTube, Search, etc.) *in the plurality* (e.g. Google Drive, Play, Gmail, Maps, YouTube, Search , etc.)*, in a second application region* (e.g. region including the second visual component, etc.) *in the presentation space, wherein the first navigation region* (e.g. drop-down navigation panel , etc.) *is determined based on a location of at least one of the first visual component* (e.g. Google Search header including the "Apps Grid" control, etc.)*, a parent visual component of the first visual component, and a child visual component of the first visual component.* The Accused Devices

therefore infringe these elements literally or, in the alternative, under the doctrine of equivalents.

109.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

110.    In the specification of the '361 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional."

111.    A human cannot perform these tasks.

112.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '361 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '361 Patent. Such products include, without limitation, one or more of the Accused Devices. Such products have no substantial non-infringing uses and are for use in systems that infringe the '361 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '361 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Devices. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '361 Patent at least as early as the service of the prior complaint in

Case 6:16-cv-1249, Defendant's due diligence in connection with related litigation between the parties (*see* ¶ 14), and Defendant's routine freedom to operate analysis. Defendant induces its end users to infringe at the very least through advertising and/or user manuals. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."). Thus, Defendant is liable for infringement of one or more claims of the '361 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '361 Patent under 35 U.S.C. § 271.

113.    On information and belief, Defendant's infringement of the '858 Patent has been and continues to be willful. Defendant has had knowledge of the '858 Patent, including but not limited to at least one or more of the following:

    a.  The original complaint filed in this case (Dkt. 1) on or about March 20, 2018.

    b.  Defendant's acts are willful as it knew about patents related to this one since 2016 based on a prior lawsuit with Cypress.  But Defendant did not stop its infringing activity, including importing, offering for sale and selling the accused products.

    c.  Due Diligence conducted in conjunction with a prior suit between the parties.

    d.  Routine freedom to operate analyses.

     e.   Discussions with Google, Inc.

     f.   The filing of lawsuits against Samsung and HP for their infringing Chromebooks.

*See Bush Seismic Techs. LLC v. Am. Gem Socy.,* 2:14-CV-1809-JRG, 2016 WL 9115381, at *2 (E.D. Tex. Apr. 13, 2016) ("Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants.") (internal marks omitted). On information and belief, Defendant has had at least had constructive notice of the '858 Patent by operation of law.

114.   Defendant's acts of infringement of the '361 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '361 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

## REQUEST FOR RELIEF

Cypress incorporates each of the allegations in paragraphs 1 through 60 above and respectfully asks the Court to:

(a)    enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)    enter a judgment awarding Cypress all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe,

the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)     enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Cypress all other relief that the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Cypress demands a jury trial on all issues that may be determined by a jury.


Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W. Ferguson Street

Tyler, Texas 75702
Telephone: (888) 908-4400

***Counsel for Cypress Lake Software, Inc.***

**CERTIFICATE OF SERVICE**

I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

  /s/ Randall T. Garteiser
Randall T. Garteiser